INDIAN REFINING CO. v. BUHRMAN.

(Circuit Court of Appeals, Second Circuit. January 12, 1915.)

No. 108.

1. APPEAL AND ERROR ⬤⟞1002—REVIEW—QUESTIONS OF FACT.

In an action for salary by the assistant treasurer of a corporation, where the testimony of plaintiff. and the treasurer as to whether the treasurer discharged plaintiff at a certain time, or whether the matter was left open, the jury's finding for plaintiff was conclusive.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. ⬤⟞1002.]

2. CORPORATIONS ⬤⟞519—OFFICERS—ACTIONS FOR COMPENSATION—EVIDENCE.

In an action for salary by the assistant treasurer of a corporation, evidence *held* insufficient to show that the executive committee authorized or ratified plaintiff's discharge by the treasurer, or that it discharged him by electing his successor.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2085, 2088–2089, 2091, 2093; Dec. Dig. ⬤⟞519.]

3. CORPORATIONS ⬤⟞521—OFFICERS—ACTIONS FOR COMPENSATION—INSTRUCTIONS.

In an action for salary by the assistant treasurer of a corporation, if a statement in the minutes of a meeting of the executive committee, at which plaintiff's failure to resign was discussed, that a member of the committee said that the matter be left with the treasurer with instructions to go ahead, was ambiguous as to whether this authorized plaintiff's discharge by the treasurer, defendant's rights were fully preserved by an·instruction that it was claimed by defendant that the instructions to go ahead were instructions to discharge or cut down salaries at will, and by plaintiff that so far as he was concerned the instructions simply related to getting his resignation, and that the jury would put the construction on it and give it such force as they thought it deserved.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2094–2098; Dec. Dig. ⬤⟞521.]

4. CORPORATIONS ⬤⟞522—OFFICERS—ACTIONS FOR COMPENSATION—AMOUNT OF RECOVERY.

In an action for salary by the assistant treasurer of a corporation appointed November 15, 1911. where it appeared that plaintiff continued to attend at the company's ·offices regularly until after August 1, 1912, but that shortly thereafter he left, a verdict for his salary to September 15th was too large to the extent of the salary from August 15th.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2035, 2099–2113; Dec. Dig. ⬤⟞522.]

5. EVIDENCE ⬤⟞389—CORPORATE RECORDS—PAROL EVIDENCE.

The written minutes of a corporation could be explained, but not changed, varied, or modified, by oral testimony.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1717, 1718; Dec. Dig. ⬤⟞389.]

In Error to the District Court of the United States for the Southern District of New York.

·This cause comes here on writ of error to review a judgment of the District Court, Southern District of New York, entered upon the verdict of a jury in favor of defendant in error, who was plaintiff below. The action was·brought to recover salary as assistant treasurer of defendant from March 1 to September 15, 1912.

⬤⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

J. W. Weed, of New York City, for plaintiff in error.
C. H. Payne, of New York City, for defendant in error.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. Buhrman was appointed to his position on November 15, 1911, by the board of directors, to serve until his successor was appointed. The fixing of his salary was left to the president of the company, and was fixed by him at $7,000 per annum. The by-laws invested the board of directors with the powers of the corporation, including the power to remove officers. There was an executive committee, authorized by the board to exercise all the powers of the board when the latter was not in session. Mr. Pomeroy was the treasurer and one of the members of the executive committee. The power to remove other officers, such as the assistant treasurers, was not an incident of his office, and there is nothing to show that he possessed such power by usage. Plaintiff does not contend that he could not be dismissed by proper authority before the appointment of his successor, nor that the board of directors could not authorize Pomeroy to discharge him, nor that, Pomeroy having undertaken to discharge him, the board could not ratify his action in so doing. The main questions raised here are not questions of law, but questions of fact.

[1] The company was financially embarrassed in the autumn of 1911. Pecuniary assistance was given it by the Guaranty Trust Company. Some of the officers of the latter company were elected to the directorate of defendant and placed on its executive committee. Mr. Franklin was one of these, so was Mr. Pomeroy, and an effort was made to reduce expenses. The first plaintiff knew of this was on February 3, 1912, when he had an interview with Pomeroy. Of this interview there are two narratives. Pomeroy says he told Buhrman he must go on March 1st, drawing salary to that time, and that, although Buhrman protested that it was unfair to throw him out summarily, in view of his long service with the company, he did not refuse to go. If this is what happened, Pomeroy discharged plaintiff on that day, and, if the board or executive committee subsequently ratified his action, it would be operative, certainly from the date of ratification.

Buhrman, however, gave a different narrative of what took place. He said that Pomeroy told him of the arrangement with the Trust Company, and that his services would no longer be required; that upon his objection and protest, and after some discussion, Pomeroy told him to go on and see Franklin about the matter; that he did so; that he and Franklin talked it over, and the latter told him he would take it up, and let him (Buhrman) hear from him. This was evidently not a discharge. The subject was still left open. It was sent to the jury to say which narrative of this interview of February 3d was the correct one. Their verdict shows that they found Buhrman's story to be correct, a conclusion which we must accept.

[2] The next item of evidence is found in the minutes of the executive committee held on February 6, 1912. The relevant portions are as follows:

"Salaries: Mr. Pomeroy reported that he had taken up the matter of salary with a number of men. He stated that he had explained the situation to Mr. Buhrman, but that Mr. Buhrman had not sent in his resignation, as he felt that some man younger in the service of the company should be let out in place of himself, who had been with the company several years. Mr. Pomeroy replied that the situation the company had to face was one of economy, and that if men were being paid too much there would have to be a remedy. Mr. Dwight asked if Mr. Buhrman's knowledge to the company was not of some importance."

After some discussion as to other employés with whom Pomeroy had had interviews, some of whom he said had agreed to leave, the minutes state:

"Mr. Franklin said that in view of the fact that the President had stated to the board that there was not a man whose resignation could not be obtained immediately, that the matter be left with Mr. Pomeroy with instructions to go ahead."

These minutes do not evidence any ratification of a prior discharge of plaintiff (by Pomeroy), because there is no proof of any prior discharge, nor, indeed, any indication on the face of the minutes that a prior discharge was supposed to have taken place.

[3] It is contended, however, that these minutes show that Pomeroy was authorized by the executive committee on February 6th to discharge Buhrman. We do not think the minutes should be thus construed; but, if there be any ambiguity in them, defendant's rights were fully preserved in this excerpt from the charge to the jury:

"It is claimed here on the part of the defendant that instructions to go ahead were instructions to go ahead and discharge at will, discharge employés, or cut down salaries, do as he pleased; while on the part of this plaintiff it is contended that instructions to go ahead simply related, so far as this plaintiff was concerned, to getting his resignation. Of course, you will put the construction on it and give it such force as you think it deserves, and is entitled to, and has. You see, there is no formal resolution."

The verdict shows that the jury construed this record of the transactions of the executive committee as we think it should be construed.

The next item of proof is found in an excerpt from the minutes of the executive committee February 13, 1912, which reads:

"Mr. Pomeroy said that it was advisable to have some one authorized to sign assignments sent to the Guaranty Trust Company, and suggested that Mr. J. S. Bailey be authorized to do so. Upon nomination duly seconded Mr. J. S. Bailey was unanimously elected an assistant treasurer of the company, with power to sign all checks, notes, drafts, and obligations for payment by the company, and to serve until his successor should be chosen by the board."

Of course, if this minute recorded that Bailey had been elected by the executive committee, which had full power in the matter, as successor of Buhrman, that would end the controversy, because Buhrman's term of employment as fixed originally lasted only until the appointment of his successor. But at the time this action was taken there were two "assistant treasurers," Buhrman and Dilloway. The resolution does not state which of these two Bailey was to succeed; indeed, for aught that appears, the resolution provided only for the appointment of a third assistant treasurer.

The only other item of evidence from the minutes is found in the record of a meeting of the executive committee on June 11, 1912, at which the "chairman stated that at the present time the officers of the company are as follows," giving a list which includes "assistant treasurer, Bailey," and "assistant treasurer, Dilloway." This cannot be taken as a ratification of a prior discharge, because no prior discharge calling for ratification has been shown, the jury having found for plaintiff on all the disputed points of his interviews with Pomeroy.

[4] Buhrman continued to attend at the company's offices regularly until "after August 1, 1912," doing such work as was given to him. Shortly after August 1st he seems to have left them. Exactly why, under these circumstances, he was allowed to recover salary until September 15th, is not made clear to us. We think the verdict was too large to the extent of salary from August 15th to September 15th.

[5] We think there was no error in refusing to charge that the jury "were not entitled to consider any oral testimony in the case for the purpose of varying or modifying the written minutes of the company." It was correct to charge, as the court did, that oral testimony could explain the meaning of the minutes, but that a fact recorded could not be changed by oral evidence.

The construction we have given to the minutes, especially to the record of the meeting of February 13th, makes it unnecessary to discuss the exceptions to the charge.

Upon plaintiff's consenting to reduce the verdict in the amount of salary from August 15th to September 15th, the judgment is affirmed.