*Decision will be entered under Rule 50.*

INTERSTATE REALTY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 46272, 50981.  Promulgated February 29, 1932.

*John E. McClure, Esq.*, for the petitioner.
*Nathan Gammon, Esq.*, for the respondent.

OPINION.

LANSDON: In the proceeding at Docket No. 50981 relating to petitioner's tax liability for the fiscal year 1927, the deficiency is based upon determination of the respondent as follows: The addition to income of $22,152.45, $5,625.55 and $2,199.95 representing, respectively, realization of profit from the collection of deferred payment notes, interest on the notes, and a collection on the principal thereof. The additional tax liability asserted for such year is $4,047.02. At Docket No. 46272, the deficiency for 1928 in the amount of $4,396.82 is based upon respondent's additions to income of $22,152.45, $5,625.55, $1,194.30, $347, $2,199.95 and $1,500, representing realization of profit from deferred payments notes, accrued interest on such notes, profit on an exchange of property, rent, collection on notes and loss from the operation of an insurance agency. The first three items in each of the above categories are identical and decision thereon for either year automatically removes it from consideration as an element of tax liability for the other.

The major controversy here relates to the taxability of certain distributions of notes and accrued interest thereon. The respondent has determined that such distribution took place on October 3, 1927, which is within the petitioner's taxable year ended at July 31, 1928, and that it falls within the provisions of section 44(d) of the Revenue Act of 1928. The petitioner contends that the transaction was completed within its taxable year ended at July 31, 1927; that it was a distribution in kind and so not taxable, and relies upon our decision in *Virginia Beach Golf Course Annex Corporation*, 23 B. T. A. 1169. It also argues that even if we should find that the distribution was made in the petitioner's taxable year ended July 31, 1928, the realized profits therein are not taxable under the provisions of section 44(d) of the Revenue Act of 1928, since that section applies expressly and only to profits resulting from the realization of installment notes and the sales in question were on the deferred payment plan, under which capital must be recovered before any profit becomes taxable. A further question of law, not argued by either party, is whether the 1928 Act is applicable in any event, since the taxable transaction, if any, occurred in 1927 and the law relied on by the respondent was not enacted until late in May, 1928, and, except as to certain matters not pertinent to the issues of these proceedings, was not retroactive.

The historical sequence of the events involved in this controversy is clearly disclosed by the record. Fariss, a stockholder, director and the president of this petitioner, desired, on account of failing health, to dispose of his stock and withdraw from all participation in the affairs of the corporation. After many oral conferences the stockholders' agreement, which we have incorporated in our findings of fact, was entered into by all the parties in interest. On May 16, 1927, under that agreement, Fariss endorsed his stock certificates in blank and turned them over to Koplin, Fant, and Richardson, who, at the same time, delivered to him the deferred purchase money notes of the face value of $25,358.45, upon which interest had then accrued in the amount of $5,625.55. Apparently the petitioner contends that these acts and the nature of the stockholders' agreement effected a closed transaction at May 16, 1927, in which stock was transferred and a dividend was declared and discharged.

A careful study of the agreement indicates that it is an executory contract in which all the parties recognized that Fariss was receiving assets of the corporation from the stockholders as individuals who were discharging their private obligations by using the property of the petitioner. This agreement, therefore, includes a provision in which Koplin, Fant, and Richardson " jointly and severally covenant and agree that they shall and will, in due legal form and

manner, and by unimpeachable corporate action, procure from said Interstate Realty Company, a good, legal and sufficient title to all and every one of said promissory notes." It is perfectly clear that the "good legal and sufficient title" to the notes could lodge in Fariss in only one way, that is, by the corporate distribution of such notes to Koplin, Fant, and Richardson, as a dividend payable from "the assets of the corporation" and the delivery thereof to Fariss by such distributees. Petitioner argues that the terms of the agreement explicitly declare the intention of the first parties and as they had the power as the sole stockholders and directors of the petitioner to accomplish any lawful corporate act at any time it must be presumed that every obligation imposed by the agreement was discharged at the date of the exchange of the stock for the notes and that any subsequent formal act of the corporation was no more than a bookkeeping record of something already done.

The theory of the petitioner is plausible, but not convincing, and is not supported by the evidence. The record shows that on May 16 the stockholders of the petitioner delivered corporate assets equal in value to accumulated earned surplus to Fariss, with a guaranty that by appropriate corporate action they would later lodge title thereto in him. There is considerable testimony by the petitioner's attorney that the action contemplated was taken in June and counsel offered in evidence an undated and unsigned carbon copy of what purported to be a resolution which it was alleged was adopted by the corporation some time before June 15, 1927. No officer or director of the petitioner has testified that such a meeting was held or that the resolution was adopted. No satisfactory evidence that the original, if any, had been lost was offered. The respondent's objection to the carbon copy as evidence was sustained by the sitting member of the Board. The only other evidence of corporate action to effect the guarantee in the stockholders' agreement is the minutes of a directors meeting held on October 3, 1927. These minutes, set out in full in our findings of fact, were produced from the records of the petitioner and are duly and properly signed by the president and secretary thereof. The corporate acts there recorded are (1) a recital that at July 31, 1927, the books of the petitioner, after audit, showed earned surplus in the amount of $33,053.04; (2) the declaration of a dividend on the outstanding common stock of the petitioner in the amount of $31,000; and (3) that the dividend so declared should be discharged by the transfer and delivery of a series of notes held and secured by the company. Obviously this was the "unimpeachable corporate action" pledged in the agreement.

Petitioner must destroy the probative value of the minutes of October 3, 1927, in order to prevail on its contention that the dis-

tribution was effected in either May or June of that year. The preponderance of authority favors the view that the records of a private corporation are conclusive evidence of its acts and may not be varied or contradicted by parol testimony. Corpus Juris 22, at page 1088, citing *Indiana Refining Co.* v. *Burhman*, 220 Fed. 426, in which the court said that "the written minutes may be explained but not changed, barred or modified by oral testimony." In *Dennis* v. *Joslyn*, 19 R. I. 666; 36 Atlantic 129, the Supreme Court of Rhode Island said:

> The declaration of a dividend is one of the most important acts of a corporation. It is an assignment pro tanto of its property. It clearly implies corporate action to that effect. It is action of such a character that it should appear on the books of the corporation.

In our opinion the record does not sustain the petitioner's contention. The stockholders' agreement and the delivery of the notes to Fariss on May 16 are not enough to establish a dividend in kind at that date. The probative value of the minutes of October 3 has not been impeached by the oral evidence. On that date the dividend of $31,000 was voted and discharged by surrender of title to the notes which had been delivered to Fariss on May 16, 1927.

The petitioner further contends that even if the dividend was voted and discharged by the notes on October 3, 1927, the transaction does not fall within the provisions of section 44(a) of the Revenue Act of 1928, which explicitly applies to the realization of profits from the disposition of installment notes. The notes in question represented deferred payments and the petitioner was required to report no profit as income until its capital investment had been recovered. In our opinion this is not a transaction to which section 44(a) of the Revenue Act of 1928 is applicable.

The controversy here is not disposed of, however, by our conclusions above. The parties agree that at May 16, 1927, the petitioner had recovered all its investment in the LaBelle subdivision except the amount of $1,022.05. From that date all realization from the notes in question in excess of the unrecovered capital was taxable income. Had there been no disposition or realization other than by collection it is clear that income so derived was reportable only as and when it resulted from such collections. The facts, however, destroy the petitioner's right to report its income from the notes as and when collected. On October 3, 1927, the corporation declared a dividend of $31,000 payable to its stockholders of record. The legal effect of that act was to separate such amount from surplus and create a corporate liability equal thereto. *United States* v. *Ginzburg*, 278 Fed. 363; *Staats* v. *Biograph Co.*, 236 Fed. 454;

*William H. Davidow Sons Co.*, 1 B. T. A. 1215; *W. J. Hunt*, 5 B. T. A. 356; *A. H. Stange*, 1 B. T. A. 810; *Eugene E. Paul*, 2 B. T. A. 150. The liability so created was discharged by the distribution of the notes. In our opinion the petitioner then realized taxable income to the extent that profit was included in the distribution. The record indicates that the distribution included profits and interest in the respective amounts of $24,335.95 and $5,625.55, or a total of $29,961.50. This amount was income to the petitioner in the fiscal year ended July 31, 1928, and is taxable to it at the corporation tax rates imposed by the Revenue Act of 1928.

The instant proceeding is clearly distinguishable on its facts from *Virginia Beach Golf Course Annex Corporation, supra.* The distribution there was in kind and apparently was one of the steps in the liquidation of the taxpayer. There it was impossible to determine to what extent the notes distributed represented the return of capital or the realization of profit. Here the conditions are quite different. The distribution was in kind, but was not made in the course of liquidation. It was in discharge of a liability incurred by the declaration of dividend out of surplus. In the circumstances it is clear that the petitioner realized the profits that it had theretofore derived from the sale of its property. There is no reason that it should escape taxation on realized income. Its distributees are subject only to the surtax on dividends received from a domestic corporation. The petitioner must pay the normal tax unless the revenues are to be deprived of an impost authorized by law.

The respondent has determined that the exchange of property in 1928 set out in our findings of fact resulted in a profit of $1,194.30. This determination is based on a finding that the property received by the petitioner had a fair market value of $12,206.08 at date of the exchange. A witness for the petitioner, Richardson, who is a director thereof, testified that in his opinion the property was not worth more than $10,000 when received. In cross-examination he admitted that he had priced it in proposed trades for other property at $12,500 and at $15,000. This testimony is not sufficient to overcome the presumption that the determination of the respondent was correct. On this issue the contention of the petitioner is denied.

On February 18, 1928, Koplin, Fant, and Richardson, who were the owners of all the capital stock of the petitioner outstanding at that time, entered into a contract with one Homer A. Parrish for the purpose of conducting an insurance agency with Parrish as manager. The petitioner contends that such agency was its property at all times and that the losses sustained were its losses and deductible from its income in the year in which they were sus-

tained. The insurance agency was conducted under a different name because of petitioner's charter limitations under the laws of Tennessee. Witnesses testified that the petitioner was at all times the beneficial owner of the insurance agency. This evidence was not overcome by any rebuttal testimony. We conclude, therefore, that on this issue the respondent must be reversed. Cf. *D. Bruce Forrester et al.*, 12 B. T. A. 104; *Carnie-Goudie Manufacturing Co.*, 24 B. T. A. 679.

The respondent has determined that petitioner realized income in its fiscal year ended July 31, 1927, in the amount of $2,199.95 resulting from the collection of notes from the sale of lots in the LaBelle subdivision upon which the original capital investment had been recovered. This amount was included in the notes delivered to Fariss on May 16, 1927, and was collected by the petitioner for his account and paid to him. It is included in the notes which discharged the dividend of $31,000 declared on October 3, 1927, and in conformity with our conclusions above is already included in the computation of the petitioner's tax liability for the year 1928.

In almost every particular the matters involved in Dockets 50981 and 46272 are identical and the two proceedings are practically duplicates. Our conclusion is that there is no deficiency involved in the proceeding at Docket No. 50981 and that the deficiency asserted at Docket No. 46272 must be redetermined under Rule 50.