Borall Corporation et al. * v. Commissioner. Borall Corp. v. Commissioner
Docket Nos. 2841, 2890, 2895.
United States Tax Court
1946 Tax Ct. Memo LEXIS 45; 5 T.C.M. (CCH) 933; T.C.M. (RIA) 46256; October 30, 1946
*45 In pursuance of a plan of liquidation of the petitioner, Borall Corporation, the directors passed a resolution reciting that the corporation declare a "liquidating dividend of $8.00 per share payable in cash or in two (2) shares of Thompson Automatic Arms Corporation stock at the valuation of $4.00 per share * * *." In accordance therewith, some stockholders received stock and the corporation sold the remaining shares and paid the remaining stockholders their liquidating dividend in cash. Upon the evidence, held: (1) That the sale was for and on behalf of the corporation and it is taxable on the profits derived therefrom; (2) that the individual petitioners are liable as transferees of the corporation. Leo Brady, Esq., for the petitioners. William A. Schmidt, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion These consolidated proceedings involve deficiencies in income tax and declared value excess-profits tax liability determined by respondent against petitioner, Borall Corporation, Docket No. 2841 for the taxable year ended March 31, 1940 in the respective amounts of $3,255 and $2,797.50 and the liability of the two individual petitioners *46 as transferees of the Borall Corporation for the same period as follows: Matthew
Samuel
J. Hall
Ungerleider
Income tax
$3,255.00
$3,255.00
Declared value excess-
profits tax
2,797.50
2,797.50
Total
$6,052.50
$6,052.50 The two individuals deny that they are liable. The deficiency determined against the Borall Corporation is due to an adjustment to net income which, in the statement attached to the deficiency notice, was explained by the respondent as follows: Adjustments to Net Income
Net income for declared value ex-
cess-profits tax computation as
disclosed by return
[1,524.47)
Unallowable deductions and addi-
tional income: (a) Capital gain
24,837.00
Net income for declared value ex-
cess-profits tax computation as ad-
justed
$23,312.53
Explanation of Adjustment (a) It is held that you realized a taxable gain of $24,837.00 during the taxable year ended March 31, 1940 as a result of the sale of 11,200 shares of Thompson Automatic Arms Corporation common stock. The gain is determined as follows: Shares Sold
5,000 shares at $4.00 per share
$20,000.00
500 shares at $3.25 per share
1,625.00
5,700 shares at $3.00 per share
17,100.00
Total receipts on sale of 11,200 shares
$38,725.00
Basis of shares sold (acquired on or
about April 1, 1939) 11,200 at $1.24
per share
13,888.00
Gain realized
$24,837.00
*47 By appropriate assignments of error the petitioner Borall Corporation, and the individual petitioners as transferees, contest this adjustment. At the hearing of these proceedings in New York City there was consolidated with them the proceeding of Matthew J. Hall, Docket No. 45. This latter proceeding involves the individual income tax liability of Matthew J. Hall for the calendar year 1939. Originally the petition therein raised several issues but all of them have been settled by agreement, except one. That one not definitely settled by agreement involves the tax consequences of the sale of certain of the same shares of the Thompson Automatic Arms stock as are involved in these proceedings. As to that issue the parties have stipulated in Docket No. 45 as follows: 8. Petitioner agrees to be bound by the decision of this Court after it has become final in the appeal of the Borall Corporation, Docket No. 2841, now pending in this Court, as to whether the sale of 11,200 shares of the Thompson Automatic Arms Corporation common stock which the Commissioner has determined resulted in a taxable gain of $24,837 to the Borall Corporation during its taxable year ended March 31, 1940, was *48 a sale by the Borall Corporation of its own property, or whether 9,460 of said shares of the Thompson Automatic Arms Corporation stock were sold for the account of Matthew J. Hall, petitioner herein. Inasmuch as the agreement above referred to is to be operative only when our decision herein become final and our decision will not become final if appeal is taken to the Second Circuit until after that court shall have decided the appeal, it is thought that the proceeding of Matthew J. Hall in Docket No. 45 can best be handled by not including it in this decision but holding it in our files until our decision herein shall have become final. When our decision in these instant proceedings shall have become final then the proceeding of Matthew J. Hall in Docket No. 45 will be taken up and decided in accordance with the agreement of the parties now on file. Findings of Fact The Borall Corporation, hereafter referred to as "Borall" was duly organized under the laws of the State of Delaware for the purpose of engaging in the general investment business. Its principal office was located in New York City. The return for the period here involved was filed with the Collector for the Second *49 District of New York. Borall had an authorized capital stock of 8,000 shares of $10 par value preferred and 5,800 shares of $1.00 par value common. On or about April 1, 1939, Borall issued to Matthew J. Hall 7,700 shares of preferred stock of $10 par value and 4,640 shares of common stock of $1.00 par value exchanged for the following: (1) 16,500 shares of common stock of the Thompson Automatic Arms Corporation, hereafter referred to as "Thompson"; (These shares had a value of $1.24 per share at the date of receipt by Hall in 1939.) (2) a contract between Matthew J. Hall and Federal Screw Works allowing Hall certain commissions on orders placed through his efforts; (3) 3,500 shares of common stock of M. J. Hall & Co., Inc. having a par value of $1.00 per share. On or about the same time it issued additional shares as follows: Pre-
ferred
Common
Lowell A. Mayberry, for cash
payment of $750
75
290
Samuel Ungerleider, for cash
payment of $750
75
290
Mortimer S. Gordon, for legal
services rendered
580
Out of the 7,700 shares of preferred stock received by Hall, he transferred in April 1939, 350 shares to Gordon and 2,500 shares to Ungerleider in *50 payment of personal obligations to them. As of this date Hall owned 4,850 shares of Borall's preferred stock. Hall thereafter transferred 120 shares of his Borall preferred stock to Aaron Sapier and/or L. S. Sapier & Co. After this transfer, Hall remained the owner of 4,730 shares of the preferred stock of Borall. The board of directors of Borall, from its organization to its dissolution, was as follows: Matthew J. Hall
Samuel Ungerleider
Lowell A. Mayberry
Mortimer S. Gordon The officers of Borall, from its organization to its dissolution, were as follows: Matthew J. Hall, president Lowell A. Mayberry, treasurer Mortimer S. Gordon, secretary During April and May 1939, Borall maintained an office and paid Hall a salary. In June 1939, the original cash capital was virtually exhausted and, at a meeting of the board of directors held on June 28, 1939, it was decided to discontinue the salary of Hall and discontinue the corporate office. These minutes provided in part as follows: Upon motion duly made and seconded, it was unanimously RESOLVED that from and after June 30, 1939 the salary of Mr. Hall be discontinued. FURTHER RESOLVED that from and after *51 June 30, 1939, the rental to Mortimer S. Gordon of $75.00 a month be discontinued. After some further discussion it was the consensus of opinion that unless satisfactory arrangements could be worked out, the corporation be liquidated and dissolved. Borall was inactive after this meeting and Hall drew no salary and the corporate office was discontinued. Hall thereafter endeavored to negotiate a sale of the Thompson stock owned by Borall to provide the corporation with working capital and took up the matter with Clokey & Miller, a brokerage firm, who agreed to purchase the 16,500 shares of Thompson stock for marketing purposes. Hall reported the result of his negotiations with Clokey & Miller to Borall's board of directors but they believed the stock would be worth a great deal more and refused to allow the corporation to sell this stock. As a result it was decided to dissolve Borall and distribute the assets. At a special meeting of the board of directors held September 9, 1939, in order to accomplish these purposes, the corporate minutes reflect the following action as having been taken: After considerable discussion and due to the uncertainty of market conditions, it was determined *52 in order to permit individual shareholders to act in accordance with their individual views, to declare a liquidating dividend on the outstanding preferred shares of this corporation payable to holders of record as of September 11, 1939, of $8.00 a share payable in cash or in two (2) shares at the valuation of $4.00 per share of Thompson Automatic Arms Corporation Stock. Upon motion duly made and seconded, it was unanimously RESOLVED that this corporation distribute 16,500 shares of the common stock of Thompson Automatic Arms Corporation as a liquidating dividend to the holders of the issued and outstanding preferred stock of this corporation, and FURTHER RESOLVED that such shares be delivered to or sold for the account of said shareholders as full and final payment of such dividend and as set forth in these resolutions. FURTHER RESOLVED that this corporation declare and pay out to shareholders of this corporation's preferred stock as of record of the close of business September 11, 1939, a liquidating dividend of $8.00 per share payable in cash or in two (2) shares of Thompson Automatic Arms Corp. stock at the valuation of $4.00 per share, free of tax and delivery charges *53 at the election of such shareholder, such election to be designated in writing by letter addressed to this corporation on or before September 11th, 1939. FURTHER RESOLVED that this dividend is payable on or before October 6, 1939. * * *
FURTHER RESOLVED that this corporation enter into an agreement with Messrs. Clokey & Miller to sell to said Clokey & Miller upon the undertaking of said Clokey & Miller to buy so many of the shares of this corporation as shall be required to satisfy the election of preferred shareholders in accordance with the above resolution. FURTHER RESOLVED that said contract with Messrs. Clokey & Miller specify a price of $4.00 per share and undertake to make delivery to Clokey & Miller in Jersey City, New Jersey free of taxes and delivery charges and that said contract contain such other terms, provisions and covenants as in the opinion of Matthew J. Hall, president of this corporation shall be appropriate, necessary or desirable to effectuate the spirit of the foregoing. * * *
On September 11, 1939, Ungerleider and Mayberry elected in a letter to Borall to receive 150 and 5,150 shares, respectively, of Thompson stock, and Hall and Gordon, as *54 owners of 4,850 and 350 shares, respectively, elected to receive their liquidating dividend in cash at the rate of $8.00 per share. These letters provided as follows: September 11, 1939 Borall Corporation 80 Broad Street New York, N. Y. Gentlemen: Please be advised that the undersigned, owner and holder of Seventy-five (75) shares of your Ten Dollar ( $10.) par value preferred stock, does hereby elect to receive One Hundred Fifty (150) shares of Thompson Automatic Arms One Dollar ( $1.) par value stock in full payment, discharge and satisfaction of the Eight Dollar ( $8.) liquidating dividend declared by this corporation to holders of its Ten Dollar ( $10.) par value preferred stock of record as of September 11th, 1939. Very truly yours, (Signed) Lowell A. Mayberry September 11, 1939 Borall Corporation 80 Broad Street New York, N. Y. Gentlemen: Please be advised that the undersigned, owner and holder of Two Thousand Five Hundred Seventy-five (2575) shares of your Ten Dollar ( $10.) par value preferred stock, does hereby elect to receive Five Thousand One Hundred Fifty (5150) shares of Thompson Automatic Arms One Dollar ( $1.) par value stock in full payment, discharge *55 and satisfaction of the Eight Dollar ( $8.) liquidating dividend declared by this corporation to holders of its Ten Dollar ( $10.) par value preferred stock of record as of September 11th, 1939. Very truly yours, (Signed) Samuel Ungerleider September 11, 1939 Borall Corporation 80 Broad Street New York, New York Gentlemen: Please be advised that the undersigned, owner and holder of four thousand eight hundred fifty shares (4,850) of your Ten Dollar ( $10.) par value preferred stock, does hereby elect to receive the liquidating dividend in cash at the rate of Eight Dollars ($8.00) per share. Very truly yours, (Signed) Matthew J. Hall September 11, 1939 Borall Corporation 80 Broad Street New York, N. Y.
Gentlemen: Please be advised that the undersigned, owner and holder of Three Hundred Fifty (350) shares of your Ten Dollar ( $10.) par value preferred stock, does hereby elect to receive the liquidating dividend in cash at the rate of Eight Dollars ( $8.) per share. Very truly yours, (Signed) Mortimer S. Gordon A meeting of the board of directors of Borall was held on September 14, 1939 approving the minutes of the meeting of September 9, 1939, and providing *56 in part as follows: The chairman then requested the Secretary to read to the meeting the minutes of the meetings of August 23rd, 1939 and September 9th, 1939 which the secretary proceeded to do. Upon motion duly made and seconded, it was unanimously RESOLVED that the minutes of August 23rd and September 9th, of the Board of Directors be and they hereby are adopted as read. FURTHER RESOLVED that the acts of the officers and directors as outlined in the said meetings, be and they hereby approved, ratified and confirmed in all respects. Mr. Hall then reported that the corporation had been notified that the holders of the preferred stock had exercised the elections in respect of the liquidating dividend declared on September 9th, 1939 and that certain shareholders elected to exchange 5300 shares of Thompson Automatic Arms Corporation stock in lieu of the cash dividend and that he had consummated arrangements with Messrs. Clokey & Miller for the sale by the Borall Corporation of 11,200 shares of the Thompson Automatic Arms Corporation stock owned by this company. Mr. Hall then submitted a form contract which was to be executed on the following day with Messrs. Clokey & Miller, *57 copy of which contract was directed to be filed with these minutes. Upon motion duly made and seconded, it was unanimously RESOLVED that the proposed contract with Messrs. Clokey & Miller, which was deemed for the best interests of this corporation, be executed forthwith and Mr. Hall be and he hereby is authorized, directed and empowered to execute such contract and affix the corporate seal thereto, as well as any and all other documents. FURTHER RESOLVED that this corporation sell, assign, set over and transfer to Messrs. Clokey & Miller, or their nominee, all or any part of 11,200 shares of Thompson Automatic Arms Corporation $1.00 par value stock now owned by this corporation free and clear of taxes and delivery charges at Jersey City, New Jersey, upon receipt by this corporation in current New York funds, of $4.00 per share. FURTHER RESOLVED that Lowell A. Mayberry, treasurer of this corporation, or Matthew J. Hall, president, each individually and without the other, are hereby authorized, empowered and directed to execute in behalf of this corporation assignments, powers of attorney, or any other document of any kind, nature or description and to affix the corporate seal *58 thereto, and to do any and all acts of any kind, nature or description necessary, incident or desirable to effectuate the intent and spirit of the foregoing resolution. Mr. Hall then advised the corporation that the First National Bank of Jersey City, was willing to act as custodian to effectuate the foregoing transfer upon condition that a base charge of $75. for its services was paid and $1.50 per transaction. The following resolution was then presented: WHEREAS this corporation desires to deposit with the First National Bank of Jersey City, as Custodian, securities and other property of this corporation and a form of agreement setting forth the erms and conditions under which such custody accounts would be maintained with said Bank has been submitted to this meeting. NOW THEREFORE BE IT RESOLVED, that the form of such agreement be and it is hereby in all respects approved, and that Matthew J. Hall, President, or Lowell A. Mayberry, Treasurer of this Corporation be and either hereby is authorized and directed in name and on behalf of this corporation to execute and deliver such agreement to said The First National Bank of Jersey City. FURTHER RESOLVED that the authority *59 be, and hereby is, given to said two of the following officers of this corporation, to wit: Lowell A. Mayberry, Treasurer, Matthew J. Hall, President, from time to time in the name and on behalf of this corporation to deposit with said the First National Bank of Jersey City any securities or property of this Corporation to be held under the terms of said custody agreement; to withdraw any securities or other property from the custody of said Bank; to give directions to said Bank to purchase additional securities for the account of this corporation, or to deliver any securities or other property in said custody account to other persons, firms or corporations, or to sell or otherwise dispose of said securities or other property, and to reinvest the proceeds of any such sales in such manner as may seem to said officers advisable, and in connection with any of the foregoing powers to execute and deliver such receipts, assignments, deeds, bills of sale or other instruments as may be required or as they deem advisable and to affix the corporate seal thereto. * * *
FURTHER RESOLVED that this corporation cause 12,500 shares of Thompson Automatic Arms Corporation $1.00 par value stock *60 now owned by this corporation to be transferred into the name of Dean & Co. as the nominee of this corporation for the purpose of effectuating and/or all of the foregoing transactions. FURTHER RESOLVED that Lowell A. Mayberry, treasurer of this corporation, or Matthew J. Hall, president, each individually and without the other, are hereby authorized, empowered and directed to execute in behalf of this corporation, assignments, powers of attorney, or any other documents of any kind, nature, or description and to affix the corporate seal thereto, and to do any and all acts of any kind, nature or description necessary, incident or desirable to effectuate the intent and spirit of the foregoing resolution. Borall addressed a letter dated September 6, 1939 to Clokey & Miller, in which it was agreed to sell 11,200 shares of Thompson to Clokey & Miller, which provided in part as follows: We do hereby agree to and by these presents do sell, and you do agree and by these presents do buy from us 11,200 of the common $1.00 par value stock of Thompson Automatic Arms Corporation at the price of $4.00 per share. * * *
All of the stock being sold herein is owned by us. This corporation *61 is not in control of or in common control with others of Thompson Automatic Arms Corporation. * * *
If the foregoing is in accordance with your understanding of our agreement, will you kindly so acknowledge by executing the duplicate original attached hereto. Very truly yours, BORALL CORPORATION (Signed) By Lowell A. Mayberry Treas. ACCEPTED: CLOKEY & MILLER
(Signed) Gerald Clokey General Partner signed at Jersey City, N.J. Sept. 15, 1939. On September 15, 1939, Borall delivered to the First National Bank of Jersey City, New Jersey, certificates for 12,500 shares of Thompson stock, and on November 15, 1939, Borall delivered additional certificates for 4,000 shares of Thompson stock. The receipt from the bank stated that these 4,000 shares were registered in the name of Hall and were received for the account of Borall. These certificates represented the entire holdings of Thompson stock. On or about September 22, 1939, the First National Bank of Jersey City, New Jersey, delivered 5,150 shares to Ungerleider and 150 shares to Mayberry, who elected to take the stock in lieu of cash. The remaining 11,200 shares of Thompson stock delivered to the First National Bank of *62 Jersey City were sold as follows: Date
Number
Per Share
Total
September 16, 1939
1,250 $4
$ 5,000
September 19, 1939
1,250
4
5,000
September 22, 1939
1,250
4
5,000
October 20, 1939
1,250
4
5,000
October 21, 1939
500
3.25
1,625
December 23, 1939
2,000
3
6,000
January 12, 1940
1,000
3
3,000
February 5, 1940
2,700
3
8,100
11,200
Total Amount Realized
$38,725 Of the 11,200 shares, 9,200 were sold by Clokey & Miller and 2,000 by Harris, Upham and Company. The proceeds of the foregoing sales were remitted to Borall on various dates commencing on September 23, 1939, and Borall distributed the proceeds from the sale of 10,400 shares to the holders of its preferred stock as follows: Rate per
Date
Share
Hall
Gordon
Saphier
Total
9-23-39
$2.75
$13,007.50
$ 962.50
$330.00
$14,300.00
10-24-39
1.00
4,730.00
350.00
120.00
5,200.00
12-21-39
.35
1,655.50
122.50
42.00
1,820.00
12-27-39
1.15
5,539.50
402.50
138.00
6,080.00
1-15-40
.60
2,838.00
210.50
72.00
3,120.50
2- 6-40
1.15
5,439.50
402.50
139.00
5,981.00
$33,210.00
$2,450.50
$841.00
$36,501.50
Borall, *63 subsequent to the receipt of the proceeds derived from the sale of the 800 shares of Thompson Automatic Arms Corporation stock which remained, distributed the same to all the preferred stockholders at the rate of 25 cents per share for each share of preferred stock, as follows: Rate per
Date
Share
Hall
Gordon
Saphier
Ungerleider
Mayberry
Total
7-26-40
.25
$1,182.50
$87.50
$30.00
$643.75
$18.75
$1,962.50
The proceeds received by Hall and Gordon from Borall on account of their cash dividend equalled $7.00 for each share of Borall preferred stock owned by them. Neither Hall nor Gordon made any further demand upon Borall on account of this liquidating dividend. Borall was dissolved on July 8, 1940, and the certificate of dissolution was filed in the office of the Secretary of the State of Delaware on July 10, 1940. The remaining assets of Borall consisted of the proceeds from the sale of 800 shares of Thompson stock, the Federal Screw Works contract and the 3,500 shares of M. J. Hall & Co., Inc. The Federal Screw Works contract and the 3,500 shares of stock of M. J. Hall & Co., Inc. had no fair market value and on or about July 24, 1940 were *64 transferred to Hall for a nominal consideration and on or about January 7, 1941 Hall conveyed a one-third interest in the Federal Screw contract to Ungerleider and Mayberry. As above set out, a final liquidating dividend was authorized and paid on or about July 26, 1940 from the proceeds of the sale of the remaining 800 shares of Thompson stock at the rate of 25 cents per share on the outstanding preferred stock of Borall or a total amount of $1,962.50. After this final liquidation there were no assets of Borall. The above distribution hereinabove set out was pursuant to a plan for complete liquidation of Borall. Borall filed its income tax return for the fiscal year beginning April 1, 1939 and ended March 30, 1940 indicating no income for the fiscal year. After an examination of the books and records of Borall by an internal revenue agent several years later, certain changes were made in the corporate minutes of the meetings held September 9 and September 14, 1939 by Gordon, the secretary. The changes made by Gordon from those as recorded in the original minutes are illustrated by the comparisons shown in the following two columns: Original September 9, 1939 Minutes (Resp. *65 Ex. F.) (4th Paragraph, p. 2.) * * * share payable in cash, or in two (2) shares at the valuation of $4.00 per share of Thompson Automatic Arms Corporation Stock. (3d Paragraph of Resolution, p. 3.) The resolution passed at this meeting provided in part "* * * share payable in cash or in two (2) shares of Thompson Automatic Arms Corp. stock * * *" (7th Paragraph of Resolution, p. 3.) FURTHER RESOLVED that this corporation enter into an agreement with Messrs. Clokey & Miller to sell to said Clokey & Miller upon the undertaking of said Clokey & Miller to buy so many of the shares of this corporation as shall be required to satisfy the election of preferred shareholders in accordance with the above resolution. Substitute September 9, 1939 Minutes (Pet. Ex. 5.) (4th Paragraph, p. 3.) * * * share, payable in two (2) shares of Thompson Automatic Arms Corporation stock at the valuation of $4.00 per share. (3d Paragraph of Resolution, p. 4.) * * * share payable in two (2) shares of Thompson Automatic Arms Corp. Stock * * * (7th Paragraph of Resolution, p. 4.) FURTHER RESOLVED that this corporation enter into an agreement with Messrs. Clokey & Miller to sell to *66 said Clokey & Miller for the account of its shareholders, upon the undertaking of said Clokey & Miller to buy so many of the shares of this corporation as shall be required to satisfy the election of preferred shareholders in accordance with the above resolution. Ungerleider received Thompson stock and cash from Borall in the liquidation of his preferred stock which had a value in excess of $18,000. Ungerleider, as a director of Borall, participated in the meeting and was aware that Borall was being liquidated. Hall received cash from Borall in the liquidation of his preferred stock in an amount of $34,392.50. Borall was left without any assets when its liquidation was complete. The deficiency involved herein was duly assessed against Borall and a letter was mailed by the respondent to Ungerleider and Hall, as transferees, and the deficiency in tax remains unpaid. Original September 14, 1939 Minutes (Resp. Ex. G., pp. 1 and 2.) Mr. Hall then reported that the corporation had been notified that the holders of the preferred stock had exercised the elections in respect of the liquidating dividend declared on September 9th, 1939 and that certain shareholders elected to exchange *67 5300 shares of Thompson Automatic Arms Corporation stock in lieu of the cash dividend and that he had consummated arrangements with Messrs. Clokey & Miller for the sale by the Borall Corporation of 11,200 shares of the Thompson Automatic Arms Corporation stock owned by this company. (1st Paragraph of Resolution, p. 2.) RESOLVED that the proposed contract with Messrs. Clokey & Miller, which was deemed for the best interests of this corporation, be executed forthwith and Mr. Hall be and he hereby is authorized, directed and empowered to execute such contract and affix the corporate seal thereto, as well as any and all other documents. Substitute September 14, 1939 Minutes (Pet. Ex. 6, pp. 2 and 3.) Mr. Hall then reported that the corporation had been notified that the holders of the preferred stock had exercised their election in respect of the liquidating dividend declared September 9th, 1939 and that certain shareholders had elected to have the corporation sell for their account their shares of Thompson Automatic Arms Corporation stock, and that he had consummated arrangements with Messrs. Clokey & Miller for the sale by the Borall Corporation of 11,200 shares of Thompson *68 Automatic Arms Corporation stock, 10,400 of which are owned by certain shareholders and 800 shares of which are owned by this company. (1st Paragraph of Resolution, p. 3.) RESOLVED that the proposed contract with Messrs. Clokey & Miller, which was deemed for the best interests of all interested parties, be executed forthwith and Mr. Hall be and he hereby is authorized, directed and empowered to execute such contract and affix the corporate seal thereto, as well as any and all other documents. [Italics supplied to identify changes.] Opinion BLACK, Judge: Petitioners contend that the sale of certain shares of Thompson stock by the Borall Corporation was a sale not by Borall for its own account, but as agent for Hall and Gordon individually and that Borall is not taxable on any gain resulting from the sale. Petitioners argue that in June 1939 it was recommended by the board of directors of Borall that unless satisfactory arrangements could be made for the continuance of Borall, that it be dissolved; that Hall wished to sell the Thompson stock in order to acquire operating funds for Borall but the board of directors refused to agree to the sale; that it was, therefore, decided *69 to dissolve the corporation and distribute the assets; that it was intended to distribute the Thompson stock in kind so as to enable each of the shareholders to do with Thompson stock as he chose; that petitioner Hall, who had been closely associated with the reorganization of Thompson did not wish the securities trade to know that he was selling his Thompson stock as he thought it would have a depressing effect on the market, and conceived the idea of having Borall sell the Thompson stock for himself and some of the other stockholders, as his agent. Petitioners also contend that the respondent, having accepted the treatment accorded to the transactions by Hall and Gordon and collected taxes from Hall on that basis, should be estopped from asserting that the sale was a sale by Borall and that respondent has failed to sustain the burden of proof with respect to transferee liability of Hall and Ungerleider. Respondent contends that Hall and Gordon in accordance with the resolution of the board of directors on September 9, 1939 elected to take their liquidating dividends in cash and Borall, in selling certain shares of Thompson stock, realized a gain for which it is taxable and that *70 Hall and Ungerleider are liable as transferees. The question herein of whether the sale was made by the corporation for itself or whether it was made by it as agent for Hall and Gordon is really one of fact rather than one of law. The record indicates that the corporation had been unsuccessful and at a special meeting of the board of directors on June 29, 1939, it was agreed that unless satisfactory arrangements could be made for its continuance that it should be dissolved. Thereafter at a special meeting of the board of directors held on September 9, 1939, it was resolved that the corporation distribute 16,500 shares of Thompson stock as a "liquidating dividend to the stockholders of the issued and outstanding preferred stock of this corporation," that the corporation declare and pay to the preferred stockholders as of record on September 11, 1939, a "liquidating dividend of $8.00 per share payable in cash or in two (2) shares of Thompson Automatic Arms Corporation stock at the valuation of $4.00 per share * * * at the election of such shareholders, such election to be designated in writing by letter addressed to this corporation on or before September 11, 1939." In accordance *71 with these resolutions, Ungerleider and Mayberry in a letter addressed to Borall dated September 11, 1939, elected to receive shares of Thompson stock "in full payment, discharge and satisfaction of the eight dollars ( $8) liquidating dividend declared by this corporation" and Hall and Gordon, in a letter dated the same day, elected "to receive the liquidating dividend in cash at the rate of eight dollars ( $8) per share." At a meeting of the board of directors held on September 14, 1939, the minutes of September 9, 1939, were approved and these minutes set out that the corporation had been notified that the preferred stockholders had "exercised the elections in respect of the liquidating dividend declared on September 9, 1939 and that certain shareholders elected to exchange 5,300 shares of Thompson Automatic Arms Corporation stock in lieu of the cash dividend and that he (Hall) had consummated arrangements with Messrs. Clokey & Miller for the sale by the Borall Corporation of 11,200 shares of the Thompson Automatic Arms Corporation stock owned by this corporation." Borall addressed a letter dated September 6, 1939, to Clokey & Miller in which it agreed to sell 11,200 shares of the *72 Thompson stock which was signed by Mayberry on behalf of the Borall Corporation and accepted by Clokey & Miller on September 15, 1939. Thereafter 16,500 shares of Thompson stock were delivered to the First National Bank of Jersey City, New Jersey, which was acting as custodian. The Bank delivered 5,150 shares to Ungerleider and 150 shares to Mayberry and took their receipts. The remaining shares were sold and the proceeds paid to Borall who distributed to Hall and Gordon cash in accordance with their election to receive cash. A cash distribution was also made to the stockholder Sapier. The proceeds of the sale of 800 of these 11,200 shares were distributed ratably to all five of the stockholders of Borall as shown in our findings of fact. We think the corporate minutes and resolutions and subsequent sale and distribution in accordance therewith indicate that it was intended that Ungerleider and Mayberry were to receive Thompson stock in kind and Borall was to sell the remaining Thompson stock for itself and distribute the cash as had been agreed upon. No gain is here involved relating to the shares which were distributed in kind to Ungerleider and Mayberry. Petitioners argue that *73 the minutes of September 9 and September 14, as originally written, did not express the true intent of the parties and that several years later, after an examination of the corporate records by an internal revenue agent, Gordon, the secretary, change the minutes "in order to avoid any seeming inconsistency and fully to express the clear intent of the directors and stockholders." However, the minutes as originally written were written by Gordon, who was an experienced lawyer and who was also a party in interest, and we assume expressed the intent of the parties at that time. Gordon testified at the hearing and stated that he disclosed to the technical staff in an affidavit the reasons why he made the changes in the minutes which have been referred to in our findings of fact. The reasons which he gave, he stated at the hearing as follows: * * * to the best of my knowledge, I stated that the fundamental agreement of the parties was that there was to be a distribution of the Thompson stock in kind so that each shareholder could do with it as he saw fit; that thereafter, Mr. Hall, who was one of the principal organizers of the Thompson Company, felt it would be inadvisable for him to *74 appear as the seller of the stock, and we decided, he and I, that the corporation would act as agent, and the nominal seller would be the corporation, although in fact it was for the account of the individuals, because we owned the shares; and that the original minutes, which had been prepared by me, were erroneous to the effect that it did not set forth those mechanics, and that the mechanical details of effectuating the details of the transaction had never been considered by the Board, because the agreement was on the distribution of the assets, and the other members of the corporation had no interest as to what we did with the stock. We have no disposition to question the honesty of Gordon's motives in making the changes in the minutes but taking the record as a whole, we think the changes made were unwarranted. It seems to us that it is clear that when liquidation of the preferred shares of Borall to the extent of $8.00 per share was decided upon at the meeting of the directors on September 9, 1939, it was determined to give the stockholders an election as to whether they would take $8.00 in cash or would take two shares of Thompson stock at $4.00 per share. The reason for that *75 election was plain. Ungerleider and Mayberry felt that the Thompson stock would sell much higher and they wanted their distribution to be in actual shares of Thompson stock. Hall was in need of cash and Gordon also decided he would elect to take cash. The elections of the respective parties were duly filed with Borall on September 11, 1939. The elections are in writing, they are a part of the record in these proceedings and are unambiguous. We see no reason why we should disregard them. It is true, of course, that the only way that Borall had to get the cash to pay the $8.00 per share to those who elected to receive cash was to sell the Thompson stock. It is, of course, unfortunate to petitioners from a tax standpoint that Borall did not distribute to Hall and Gordon their ratable part of the Thompson stock and let them sell it. That was not done, however, and we must decide the case upon what was done rather than upon what might have been done. In General Securities Co., 42 B.T.A. 754, affirmed 123 Fed. (2d) 192, the taxpayer distributed to its stockholders a property dividend consisting of shares of stock which it owned in another corporation. These shares *76 had a fair market value at time of distribution of only a fraction of what they had cost the taxpayer. Taxpayer was contending for a dividends paid credit equal to the adjusted cost of the stock distributed. One of the arguments used by the taxpayer was that it could have sold the stock to outsiders for $1,068.33 and distributed that amount of cash to its stockholders and in that way could have realized a loss of the difference between its adjusted cost and the selling price and could have deducted this loss on its income tax return and the same tax result would have been attained as that for which it was then contending. In passing upon that argument, we said: * * * Perhaps that is true, but it takes no argument to establish the proposition that tax consequences are frequently very different on one state of facts from what they are on another state of facts. So it is in the instant case. Congress has prescribed how a personal holding company shall be taxed and what deductions it shall receive in determining its "undistributed adjusted net income" and we must give effect to those provisions even though the taxpayer personal holding company might have avoided the surtax if it had *77 handled its transactions in some other way. In the instant case, the only way we could decide in favor of petitioners would be to hold that the so-called corrected minutes written up by Gordon represented the transactions as they actually took place. For reasons we have already explained we are unable to reach such a conclusion. That the transactions might have been consummated in the manner indicated by the so-called corrected minutes does not help petitioners. Under the circumstances we must follow what was done rather than what the parties might have intended to do. Davidson v. Commissioner, 305 U.S. 44; Curtis v. Commissioner, 89 Fed. (2d) 736. There is one more circumstance upon which petitioners lay a good deal of stress in their brief to which perhaps we should devote some attention and that is that although the dividend resolution of September 9th provided that the stockholders who elected to receive cash for their preferred stock in Borall should receive $8.00 per share, these stockholders only actually received $7.00 per share and made no claim on Borall for the remainder. We think a reasonable explanation of this is found in the fact that *78 when the dividend resolution of September 9th was adopted it was confidently expected the Thompson stock would sell for $4.00 per share. In fact Borall contracted with Clokey & Miller on September 15, 1939 to sell them 11,200 shares at $4.00 per share. Clokey & Miller did, in fact, pay that amount for 5,000 of the shares as shown in our findings of fact. The remainder of the shares were sold at $3.25 and $3.00 per share on a lower market. The fact that Gordon and Hall made no claim on Borall for any difference seems to us without any important significance when all other circumstances are considered. We conclude that the sale of the Thompson stock was by the corporation and the profits from the sale inured [are taxable to the corporation. Cf. Fred A. Hellebush, et al., Trustees, 24 B.T.A. 660, affirmed 65 Fed. (2d) 902; R. G. Trippett, 41 B.T.A. 1254, affirmed 118 Fed. (2d) 764; Nace Realty Co., 28 B.T.A. 467; Liberty Service Corporation, 28 B.T.A. 1067; Interstate Realty Co., 25 B.T.A. 728. One case strongly relied upon by the petitioners should be briefly commented upon. In Louisville Trust Co. v. Glenn, 65 Fed. Supp. 193, *79 now on review by the Sixth Circuit, the question involved was whether or not the sale of whiskey warehouse receipts was made on behalf of the corporation or on behalf of the stockholders as individuals. In pursuance of a plan of liquidation, the board of directors of the distillery company adopted a resolution reciting that a dissolution in liquidation "is hereby declared to be now made to bona fide owners of the common stock of the company, as shown by the stock record book of the company, at the close of business on December 26, 1942 * * * consisting of the net equity of the company in and to the whiskey warehouse receipts representing an aggregate of 51,694 barrels of whiskey owned by it * * *." The court held that the corporate resolutions and actions thereon "constituted a valid declaration of a liquidating dividend in kind to the stockholders, and actually passed to the stockholders at that time unconditional title to the corporation's net equity in the whiskey so represented by the warehouse receipts." The resolution in the cited case shows that it was the clear intent and purpose to make a distribution in kind at that time, whereas, in these proceedings the written record indicates *80 that the stockholders had an election to receive the liquidating dividend in stock or in cash. Petitioners contend that respondent, having determined and collected taxes from petitioner Hall and treated the sale of Thompson stock as a sale by him, is now estopped from asserting that said sale was by the Borall Corporation. "The doctrine of election and estoppel must be applied with great caution to the government and its officials." Vestal v. Commissioner, 152 Fed. (2d) 132. The burden is upon the party asserting it to prove that all its essential elements are present. In support of his contention petitioner Hall cites U.S. v. Brown, 86 Fed. (2d) 798. We do not think this case is controlling. In that case a corporation was dissolved and its assets distributed. The Commissioner claimed that income taxes were owed by the stockholders upon the entire amount of the liquidating dividend, less the cost of the stock. The Commissioner disallowed the taxpayer's claim that the assessment in each case should be reduced by each taxpayer's proportionate share of the aggregate amount claimed by the government for the dissolved corporation's unpaid income and profits *81 taxes. This disallowance was sustained by this Board and no appeal was taken. Prior to the Board's decision, however, the Commissioner brought a bill in equity claiming that the individual stockholders were transferees of the assets of the corporation and were, therefore, liable for its unpaid income and profits taxes due for prior years. The Circuit Court held that the Commissioner had made a binding election in pursuing to a conclusion his determination that the stockholders were liable upon the final amount of the liquidating dividend without reduction on account of the unpaid taxes of the corporation and could not pursue the inconsistent remedy of the equity action. The court said at page 799: "The Commissioner exercised a freedom of choice. He chose to press the tax appeal proceedings and this unequivocally constituted an election." In the instant case the respondent has taken only one position, namely, that Borall sold the Thompson stock here in question and the profits therefor are taxable to it and the stockholders are liable as transferees. It is true that petitioner Hall filed his return in which he reflected the sale of the Thompson stock and paid the tax thereon. However, *82 this was the result of his own judgment. The respondent has proceeded in a legal way to determine whether or not Borall sold the stock or whether Hall did as an individual stockholder. It does not appear that Hall was misled to his disadvantage or changed his position in reliance upon any of the respondent's actions. Moreover, it has been stipulated in Docket No. 45 heretofore referred to that both Hall and the Commissioner agree to be bound by the decision of this Court in the proceedings of Borall Corporation as to his tax liability from the sale of Thompson stock. Thus the revenue, as well as Hall, has been safeguarded by this action. We find nothing in the record, therefore, to support the claimed estoppel. Sugar Creek Coal & Mining Co., 31 B.T.A. 344; Northport Shores, Inc., 31 B.T.A. 1013; Tide Water Oil Co., 29 B.T.A. 1208; Stein-Bloch Co., 23 B.T.A. 1162; United States Trust Co. of New York, 13 B.T.A. 1074; and Sweets Company of America, Inc., et al., 12 B.T.A. 1285. The decision as to whether or not the individual petitioners are liable as transferees depends, likewise, upon a question of fact *83 rather than one of law. Petitioners contend that the respondent has failed to sustain the burden of proof with respect to the transferee liability of Hall and Ungerleider; that respondent has failed to show that Borall was rendered insolvent by the distribution; that Ungerleider received distribution of his Thompson stock on September 22, 1939, at which time Borall still owned several thousand shares of Thompson stock or the proceeds thereof, and that Borall retained two other assets, namely, the contract with the Federal Screw Works and 3,500 shares of stock of M. J. Hall & Co., Inc. until July 24, 1940, both of which are now shown by the respondent to have been without any fair market value. The burden of proof to establish transferee liability is upon the respondent.[1] It is not disputed that Hall received cash from Borall in an amount in excess of the tax deficiency, and Ungerleider received stock and cash that had a value in excess of the tax deficiency. However, the mere fact that Borall transferred part of its assets to its stockholders does not establish transferee liability. A necessary item of proof is that the "taxpayer transferor was insolvent at the time of the transfer *84 or that the transfer itself made the transferor insolvent, or that the transfer was one of a series of distributions in pursuance of complete liquidation which left the corporation insolvent." R. E. Wyche, 36 B.T.A. 414, 418. In the instant case the evidence shows that the several distributions were in pursuance of a plan for the complete liquidation of Borall. The record indicates that Borall was unsuccessful and that at a special meeting of the board of directors held on July 28, 1939, it was agreed that unless satisfactory arrangements could be made for the continuance of Borall, it should be liquidated and dissolved. Thereafter, at a special meeting of the board of directors held on September 9, 1939, it was decided to declare a liquidating dividend payable in cash or in Thompson stock. It seems to be agreed that the principal asset of Borall was this Thompson stock. In pursuance of this plan there was distributed Thompson stock to Ungerleider and Mayberry, and successive payments of cash were made to the other stockholders, including Hall. The only remaining assets after February 6, 1940, were *85 proceeds from the sale of 800 shares of Thompson stock, the Federal Screw Works contract, and 3,500 shares of M. J. Hall & Co., Inc. The 800 shares of Thompson stock were sold at approximately $3.00 a share. The evidence indicates that the Federal Screw Works contract and the stock of M. J. Hall & Co., Inc. had no marketable value. The Federal Screw Works contract was a sales commission contract on business to be done with the ordnance department. Such commission contracts were frowned upon and the Federal Screw Works never paid any commissions and Borall never asked the company to pay any. Moreover, on or about July 24, 1940, these assets were transferred to Hall for a nominal consideration. Borall's certificate of dissolution was filed in the office of the Secretary of State of Delaware on July 10, 1940 and on July 26, 1940, Borall paid a final liquidating dividend of 25 cents per share or a total of $1,962.50 and was left with no assets whatever. "Tax as subsequently and retroactively levied was a potential liability of the corporation of which the stockholders must take notice." U.S. v. Armstrong, 26 Fed. (2d) 227, 231. Under these circumstances we must treat Hall *86 and Ungerleider as stockholders of an insolvent corporation who have received assets in excess of the deficiency, plus interest as provided by law. We, therefore, hold on these facts that petitioners Hall and Ungerleider are liable as transferees of Borall. Cf. Otto Botz, 45 B.T.A. 970, affirmed 134 Fed. (2d) 538; Samuel Keller, 21 B.T.A. 84, affirmed 59 Fed. (2d) 499; Benjamin E. May, 35 B.T.A. 84; George M. Brady, et al., 22 B.T.A. 596. Decisions will be entered for the respondent. Footnotes
*. Proceedings of the following petitioners are consolidated herewith: Matthew J. Hall, Docket No. 2890; Samuel Ungerleider, Docket No. 2895.↩
1. Sec. 1119 of the Internal Revenue Code↩.